Yes, your honor. Skype and Jamison cases. Again, may it please the court. And Jamison, that was the third name I heard. Michael Bostrom again for the City of Los Angeles. This case, for all intents and purposes, is really a duplication of the World Wide Rush case that we decided. This is a preliminary injunction. Well, only if you win. If you lose, there's a second argument, which is that it's covered anyway by the predecessor ordinances and it's not just a ruse or a device to escape. Yes, your honor. You took the words out of my mouth. That's what I was about to get to. The only additional issue, which is also raised in the contempt in World Wide Rush, is the city's ability to enforce its wall sign and temporary banner sign regulations, even if the district court was correct that the off-site and supergraphic sign banners. Okay. Let's start with the first issue. First issue is if you win on the constitutionality of the argument, then there's a question of whether you can still have contempt because you disobeyed an order that is ultimately held invalid. The contempt order, your honor, is actually in the World Wide Rush case. It's not in this case. Oh, sorry. Well, nobody discussed that. So we're going to just discuss this. Okay. I'm happy to answer the question. No, no. You don't have to answer the question because your opponents aren't here. Nobody discussed the contempt. So we'll just go to this case. Okay. Very good. So basically, following its decision in World Wide Rush, the following its decision in World Wide Rush, a number of sign companies sought to kind of jump on the World Wide Rush bandwagon, filing copycat lawsuits. And this is one of those copycat lawsuits basically raising the same challenge. Well, maybe we ought to hear from your opponent first to hear what their argument is. It's different than the other case. I may have pleased the Court. My name is Gary Mobley. I am plaintiff for two groups of plaintiffs or counsel for two groups of plaintiffs. Skytag Inc. is a sign company, and Jamison 1045 Wilshire is a group of property owners. And I've listened obviously to the Court's comments in the prior argument in the World Wide Rush. I'll try not to cover material that I think has been covered at depth. Needless to say, I do agree with the position taken by World Wide Rush on the prior restrain issue. I would like to address, well, first of all, two preliminary comments, and then I'd like to address the issue that was argued at length about why can't the city council exercise or retain its discretion in this case. But I have two preliminary comments. The first is that a few months ago, after an eight-month moratorium, the city of Los Angeles adopted a new sign ordinance that is exactly the same as the old sign ordinance, that is it's a general ban on off-site signs and super graphics subject to the three exceptions for specific plans, supplemental use districts, and approved development agreements. But there's one additional sentence that basically says... Basically says or says? What's that? I get nervous when people say basically, because now you're going to spin it. What does it say? It says in effect. I'm sorry, I don't have the right front end. You're going to characterize it rather than tell us what it says. Yes. These exceptions do not take effect unless the Ninth Circuit reverses. It will only take effect if and when the Ninth Circuit reverses the decision in worldwide rush. If you want, I can pull out the exact language, but I don't think it's important. Okay. But the concept is, there's several observations I have from this. Number one, the city has indicated an intent essentially to defy Judge Collins' order and retain until it is absolutely forced to the absolute unfettered discretion to approve super graphic signs to whoever or under whatever circumstances it deems appropriate. Secondly... What is wrong with that? I mean, isn't that just the normal exercise of the zoning power of a city? Let me address that then and go to the point that I was going to get to later. The city has argued that this is not a licensing scheme and that the city has, the city council has the inherent discretion always to amend its ordinance to approve these things, so why not allow it now? I think that's, in effect, the argument. The problem is, is that that argument would essentially render a city, through the mechanism that the city of Los Angeles has adopted, of being immune from prior estate doctrine. And I guess my question is, why should it be any different if the government official that is exercising unfettered discretion is the mayor, as in the case of the city of Lakewood, or a group of planning officials, as in the case of the Desert Outdoor case, but it's okay for the city council to do precisely the same thing? Well, it's not immune. If the city council says we're banning all signs put up by Democratic candidates for office or Republican, I mean, if they just run right down the center of the First Amendment, they're not immune. Yes, but the prior restraint doctrine, at least the argument that the city attorney has made, is that you can never even reach that issue. The prior restraint doctrine is designed to kick in when a government, a local government exercises unfettered discretion in First Amendment rights. It doesn't have to go to the next step of saying that they have actually abused that in an unconstitutional manner. And that's why all of the prior restraint cases allow this as a facial challenge at the time the ordinance is adopted. And the central flaw in it is that there's unfettered discretion that is exercised by the local government to ‑‑ Unfettered discretion to do what? To approve or deny persons the right to engage in protected First Amendment activities. It doesn't matter whether it's street marches, as in Shuttlesworth, whether it's news drafts on public property under the city of Lakewood, or off‑site signs which are recognized as a First Amendment form of communication. So are you saying they may have the power to ban everything, but if they have any one exception, that's it? I don't agree with the argument that the city has the power to ban all off‑site signs and super graphics. Assume that they do. Assume that they do. And they can put up a good argument under the tests. Well, first of all, I would just note that that approach that they argued was disapproved by the Supreme Court in Discovery Network v. City of Cincinnati in a footnote. But even assuming that they can ban all off‑site signs and super graphics, what gives them the right to say, you know what, we're going to decide to retain discretion to give it to whoever we want. Because that is inviting government abuse. This has nothing to do with expressive content, does it? Yes. Where did you get into that? Well, it has to do with expressive activity. And the prior restraint doctrine applies to both discrimination based on the content of the message or the identity of the speaker. And they go hand in hand. Because when you're dealing with ‑‑ I'm sorry, I'm getting really dry up here. But when you're dealing with prior restraint issues, they all go hand in hand. The danger of censorship takes many different forms. One of the most pervasive forms of censorship is to grant First Amendment rights to your cronies, the people that you're in bed with, the developers, AEG. Yeah, I really ‑‑ I don't see this as a First Amendment case because I don't see any of these regulations affecting the content of the speech or doing anything other than the time, place and manner sort of regulation, which is consistent. I think what you're really worried about, and I think it's a real problem generally in political context, is that, yeah, the city council might allow certain organizations that have contributed to the individual members to create their own SUDs or enter into their own development agreements. And it's more ‑‑ your concern is more with the way the political process works, not with the claim that your First Amendment rights are actually being violated. The problem is either you've got to say that the city council can't do anything to regulate advertising or you've got to say that when it does, it loses its right to subsequently pass a law that grants exceptions. And there's no way I don't ‑‑ if they didn't put these exceptions in here, they could create the same exceptions afterwards. They're not ‑‑ you can't ‑‑ they can't bind themselves by passing a law. Suppose they didn't mention these exceptions. They exist. And if they didn't exist, they could create them. But there's a big difference. And yours was the next question that I was going to address that you raised before, but it's essentially the same question. There is a big difference, and it raises a ‑‑ which I'll explain in a second, but it raises a question, why did the city council put these provisions in the ordinance if it's only restating their general ‑‑ Well, an aptitude is generally a good guess for a ‑‑ But it's more than ‑‑ it's more than that. There was extensive discussion in the city attorney's brief about specific plans and how he contends those are legislative in nature. Specific plans are kind of a hybrid, because they apply generally to a developer who is developing a specific project. For example, the Staples Center, and more recently the City Lights. Generally, a specific plan will be adopted for that development, or it may include some adjoining properties, but it's very site specific. If you have a general ban, I will concede that the city has the right later to say, we're going to amend that ordinance and allow signs under certain conditions in these areas. However, to do that, what they have to do is amend the ordinance, the sign ordinance. They have to amend the general plan, because the general plan is required to be consistent with the zoning laws. And then, once they do that, they can go to the specific plan and say, it satisfies the criteria, and we're going to go ahead and approve the specific plan. What the city council has done here, though, is circumvented those first two steps. And all they need to do is approve a specific plan, sign language in it, and particularly when you're dealing with a specific developer, you are getting right to the heart of the prior restraint concern, which is the city is granting these First Amendment rights to their cronies. And there's two good examples that were presented in the ordinance. How do you get – if you had nothing in this ordinance, they would have a – there is an existing provision that allows them to have these specific plans, right? It's part of the exceptions, that's all. No, no. If it were not an exception, under law, can't they have specific plans? Yes, the city – But – Development agreements, all the rest, yes. Yes, but the caveat is you can't do it if the ordinance has a total ban. You've got to amend the ordinance. Why? Doesn't a specific plan – isn't that a subsequent action by the council that would – But it has to be consistent with the zoning laws. They can't say – and this is the absurdity of the position that they're arguing. The city can't say, we don't allow any signs at all. But then a developer comes around as a political favor for contributions maybe they've made, or whatever, and says, you know what, forget about the ban. I need the right to put this extensive signage here and get it done in a specific plan without anything more. That's what they cannot do. The council has to approve that, right? The entire council has to approve that. City council has to do more than that. They have to approve the specific plan. They also have to amend the zoning law. Why do they have to amend the zoning law? Because a specific plan has to be consistent with all previous council ordinances? Certainly, because we're a country of laws, not of – No, no, come on. No, no. Please, I understand that. You know, we're a country of laws where ordinances can be amended. They can be amended – laws can be amended either by an amendment to the law or a law that's passed that conflicts with it and that overrides it. So I'm asking you a specific question. Is the rule governing specific plans that the specific plan must comply with all existing ordinances?  Yes. There has to be a consistency in the specific plan. So that's what I'm saying. And that answers the question, why did the city council put this in here? Because what they've done is they've insulated themselves from a whole broad area of review that they would have to do if they wanted to put in an exception, specific exception later for a particular developer. And then – They couldn't do that. They couldn't say, well, we're only going to favor Ed Roski. They couldn't do that, right? Absolutely. But – but – yeah, I'm sorry. Go ahead. I interrupted. Well, I'm just saying, I mean, there's certain things they can't do specifically that you could challenge in a minute. What you're trying to challenge is their broad legislative authority to enact laws that are consistent with other laws or if they're not consistent, to amend those laws. And to me, if you don't like what they're doing, you should just make sure they don't get reelected. Well, there is one problem. Let's say that that precise scenario, that hypothetical comes out. The city council announces that because it's close friends with this developer, they're going to approve a specific plan allowing massive signage. Most likely, under the current framework, sign companies that are not engaged in business in that particular specific plan would not have standing to challenge that. And I'm not prepared to give the cite, but I can certainly give that cite later because I've litigated that case in state court. And sign companies don't have standing to raise those issues if they're not directly affected by the decision. However, in contrast, if they have to amend the sign code, amend the general plan in conjunction with a specific plan, yes, it can be challenged by sign companies statewide. And that goes to the point that the question that I was thinking of coming over here, which is what does the city do then? What is the nature of our objections? As I see it, the city has two options. They can either put in their current ordinance specific fixed criteria saying, however, specific plans can only be approved if they meet these criteria and they're fixed and objective and it satisfies the problem. Or the city just adopts a total ban, and if it wants to change it later on, it has the power to do so, but it has to be in a broad framework of an amendment to the sign ordinance and general plan. That is the concern we've got. So what the city has done is essentially substitute itself as a city council instead of a licensing official as the government group that has unfettered discretion to approve or deny super graphics under these three exceptions under the current ordinance. And in that respect, I think Judge Collins' comments rejecting that argument are relevant. And this is cited on page 23 of our brief. There is no logical or legal reason to limit unfettered discretion challenges to only the statutes that on their face are explicit permitting schemes. Unfettered discretion can come in many forms. To limit these challenges to pure licensing schemes would simply push cities and states to adopt creative measures that do not on their face look like traditional permitting or licensing ordinances but still grant officials unfettered discretion to allow or deny speech based on its content. Judge Collins then concludes that this case is a perfect example of a non-traditional scheme that nevertheless creates broad unfettered discretion to limit speech based on content. Those comments were never addressed or refuted either in appellant's opening brief or reply brief or in his argument. Let me ask you one question. If under your view of the law governing, say, special districts, if the district put in or whoever when they negotiate this agreement, if they put into it, this shall constitute an exception to the freeway ban. Would that satisfy? If there were no exceptions and there was just a general ban, yes, I think there would. That's a little beyond my expertise in land use and zoning. I think the city would also have to do a land use amendment, and I've seen those done concurrently in signed cases. But, yes, I think that could be done. And I did want to make one comment in response to the SUDs, because the special use districts to me are a different category than specific plans. Specific plans, as I mentioned before, tend to be tailored specifically to a particular development project. I differ with Worldwide Brushes Council insofar as its treatment of the special use districts. The Hollywood Signage Special Use District I have no problem with. That is an area where the city has decided, in concept, has decided that it's a broad legislative enactment that covers a broad area. It covers many different properties and property owners. And there's no doubt that under the City of Mesa case, cities have the authority to limit signs to specific areas. In contrast, however, I have a major problem with the 15th Street Signage Special Use District, because that was an extremely small SUD that may only apply to a single building and was enacted for the specific purpose of allowing one particular sign company to relocate a series of signs there. That is the kind of abuse of special use districts that get to this favored treatment that I find at the heart of what I think is offensive about this scheme. I don't see why that's offensive. Why the city can't negotiate an arrangement that's consistent with its objective of getting rid of signs to remove 16 signs from one area where they're much more offensive than they are, put them in another area and put only two signs. Why isn't that something that they could forget special use districts and all these other things? I mean, just negotiate that kind of a deal if the city wants and says instead of having a total ban, we're going to have a couple of signs which is more consistent with traffic safety and with aesthetics when we got rid of 16 signs in an area where they're more offensive. Because for the simple reason that it encourages this kind of force trading that, again, I find offensive. The facts of that case are that those signs were, I believe, on Santa Monica Boulevard on the west side and were to be removed and the city would have owed compensation, I believe it's to Clear Channel. And instead, Clear Channel goes and works out a deal to relocate those signs across the city. You know what? Under the current ordinance, no other sign company has the right to relocate signs and the city's motivation for doing so was not the elimination of the signs, which they mentioned in Worldwide Rush, but a desire to avoid paying compensation. It's a good deal economically for the city. It's a great deal for Clear Channel because they get three-way exposures. But as to other companies, it stinks. And it's very similar to a recent decision in the Summit Media case. I'm sorry. This is outside. I haven't cited this case. It's not published. And if the court wants, I won't go further. But there was a recent decision in state court in favor of Summit Media striking down a settlement agreement that the city had reached with Clear Channel and CDS Outdoor, allowing them to rebuild just 108, I think, existing signs, billboard signs, to digital structures, tri-boards, and everything else, when those rights are not allowed under the code and are not granted to any other sign companies. It's the central issue of fairness and abuse of city authority that, to me, is at the heart of this prior restraint issue. Okay. I certainly appreciate the Court's patience in listening to my arguments. Thank you. Well, what about the argument come up that on these special districts, I guess, that they wouldn't they have to comply with the zoning ordinances? Well, I think he's got it completely backwards, Your Honor. What we start with under California land use law is that every city is required to adopt a general plan, which generally governs the uses in the city. These are broad policy documents. They don't get into a ton of detail. Sometimes they do have more detail, depending on the area that they're covering. So if there is a portion of the general plan that, say, governed Hollywood, and the general plan said we are not going to allow under any circumstances billboard signs in Hollywood, then the city's zoning ordinances have to be consistent with that general plan under California law. However, ordinances are consistent with general plans, not the other way around. So when you're talking about adopting a specific plan, what I heard Mr. Mobley say was that the city's specific plan that it would be adopting would be inconsistent with any existing ordinance. But it's the specific plan and the general plans that govern, not the ordinances. So essentially, if the city creates a specific plan for an area, and, again, it is with respect to areas, Mr. Mobley suggested that specific plans are adopted for specific developers only. We actually have in the record evidence that that's not true. We have the Park Mile specific plan in the record. What about his suggestion that you're making, that the city's making special deals with its cronies such as Clare Channel or the other one, the company that you mentioned, and that this type of plan that you have, the SUDs and the development agreements, allows, maybe it's a correction argument, but allows the city council to favor its friends and put other people out of business? Well, first I think we have to remember the nature of the claim that they raised here. This is a facial challenge. This is not an as-applied challenge. So could we hypothetically conceive of the circumstance? Yeah, and that's his hypothetical. Right. That it actually thinks that it actually, he says it actually happened. Let's pretend it's a hypothetical. Okay. And if it does happen, then appropriate. No, let's use it as a hypothetical in the context of a facial challenge. I'm sorry? The facial challenge is that it allows for these special deals for cronies that are arbitrary and unfair to the other people who are involved in the same type of business and development. Well, I think the problem is that in order to preserve the separation of powers, you have to let the legislative branch err before you prevent it from acting. You have to let it see, is it going to adopt a law that's illegal? Is it going to conduct some illegal activity? Ban Congress. That's not such a bad idea. That may seem desirable on some level, but, you know, our country's not founded on that principle. Well, let me come back to it with a practical question in this case. The question is, is does this ordinance really change anything about the special use districts, at least three exceptions? Counsel was saying that if we just pass the ordinance and didn't put these exceptions in, then when you granted an exception, you would be required to do more than you would now. That's absolutely not true, Your Honor. If you just have to amend the zoning or would you have to amend the freeway ordinance? The off-site ordinance, would you have to amend those to use one of these three exceptions if you hadn't put the exceptions in the ordinance? No, because I think all the city would have to do would say notwithstanding any law to the contrary, signs are allowed in this geographic area of the city. That's a common practice of legislative bodies. We speak in California law, left and right. There are certain laws that apply to the city of Los Angeles that don't apply to other cities. Well, do the SUDs or whatever they are, do these, when you create these things now, do you have that kind of a provision in them, notwithstanding any laws to the contrary? They are themselves laws and some of them probably do. Well, no, but you said you'd have to put in them notwithstanding any laws to the contrary. I think Your Honor's hypothetical was if you had a plain ban that said no exceptions. Wouldn't say no exceptions. You just said. They're banned. Yeah. They're banned. Then I think the logical thing for the city to do would be to say notwithstanding any other law. But even if it didn't do that, I think a court interpreting the two ordinances would have, one, an ordinance that says that they're banned citywide and another ordinance that said they're allowed in this area and the court would be required to reconcile the city council's intent, which would be to ban them except where they're specifically allowed. So even without the magical language, except as otherwise provided, as a matter of statutory construction, yes, the city could do that. The specific trumps the general. That's right. And your point is that first the plan and then all the ordinances flow from the plan, not vice versa. That's right. And if there is some concern here that the city has some way usurped the general legislative process by not having these debates when legislation is occurring, then bring a challenge to that process. If you're concerned that the city's ordinances are inconsistent with the specific plan or a general plan provision, then bring a challenge to that. But don't throw out the baby with the bathwater and say that the city can't ever have any exceptions at all, because if you're going to do that, then you're going to get back to what Judge Collins held here. One sign sinks you. One sign in a city of 400 square miles sinks your entire ability to regulate signs. And that can't be the law. How many miles of freeways are there in Los Angeles? I mean, hundreds probably. A lot. A lot. Unless there are any further questions, I'll submit. Thank you. Thank you. Thank you all very much. That's an interesting argument. And the court will be in recess for the day. Case submitted. Case submitted. Right. All rise. Court is adjourned.
judges: Reinhardt, Trott, Wardlaw